UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


J.S., by and through their next friends S.S. and E.S.,

                    Plaintiff-Appellant,

    vs.

EUGENE SCHOOL DISTRICT 4J,

                    Defendant-Appellee.

_____

Case No. 6:21-cv-01430-MK

**FINDINGS AND RECOMMENDATION**

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff-Appellant ("Plaintiff") brings this appeal of an administrative law judge's

("ALJ") decision issued pursuant to the Individuals with Disabilities Education Act ("IDEA"),

20 U.S.C. § 1400 *et seq.* ("IDEA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§

701 *et seq.*; and Or. Rev. Stat. ("ORS") § 343.175 against Defendant-Appellee Eugene School District 4J ("Defendant").[1] For the reasons that follow, the ALJ's decision should be AFFIRMED.

## BACKGROUND

Plaintiff was born in 2008. Compl. ¶ 8, ECF 1. He was diagnosed with fetal alcohol syndrome and developmental delay in May 2012, and attention deficit hyperactivity disorder (ADHD) in November 2013. *Id.* ¶ 12. Plaintiff has lived in the Eugene 4J school district since 2013 and has been eligible for special education services since he first enrolled in a district school. *Id.* ¶ 14. Plaintiff experienced significant behavioral challenges during the 2015-2016 school year. *Id.* ¶ 15, Answer ¶ 15, ECF 21. As a result, he was placed on home instruction in Spring 2016 and was eventually enrolled at The Child Center, a therapeutic day treatment center. Ans. ¶ 15. Defendant reimbursed Plaintiff's parents for the costs of Plaintiff's home instruction pending his enrollment at the Child Center. *Id.* Plaintiff is now enrolled in the seventh grade in the Eugene 4J School District. Compl. ¶ 8.

## I.    Relevant Factual History

On April 11, 2016, an annual IEP team meeting was held on Plaintiff's behalf. Ex. D1 at 1. Under the IDEA, an individualized education plan ("IEP") is the primary vehicle used by schools to provide each child with a free and appropriate public education ("FAPE") and is "tailored to a child's unique needs that is designed by the school district in consultation with the

---

[1] Paragraph 1 of Student's Complaint references additional federal and state statutes, regulations, and administrative rules, as well as the federal Constitution as sources for this appeal that are not referenced elsewhere in the body of the Complaint. Accordingly, this Findings and Recommendation ("F&R") limits its discussion to only those sources of law specifically alleged to have been violated in the Complaint.

child's parents after the child is identified as eligible for special-education services." *Forest Grove School District v. T.A.*, 557 U.S. 230, 234 n.2 (2009) (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)). Among other things, the IEP lists the "special education and related services" a school will provide a student so that the child can "advance appropriately toward attaining [educational] goals." 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(aa). At the 2016 IEP team meeting, Plaintiff's parents expressed that they wanted Plaintiff to be able to access a full school day and have access to a group of his peers. Ex. S18 at 2. The April 2016 IEP set goals for Plaintiff to be reintegrated into a classroom setting by April 2017. Ex. S18 at 8. The April 2016 IEP included a Behavioral Support Plan ("BSP") outlining specific strategies for staff to respond to Plaintiff's problematic behaviors. Ex. S18 at 13-16. The 2016 BSP included daily data collection regarding Plaintiff's behavior. *Id.* at 17.

In July 2016, Plaintiff's parents and the IEP team discussed placing Plaintiff in the Comprehensive Services Program at the Fox Hollow campus, a program jointly run by the Eugene School District 4J and the Lane Educational Services District "ESD program." Compl. ¶ 20; Ans. ¶ 20. Plaintiff's parents and the IEP team agreed to place Plaintiff into the ESD program, but the parties dispute whether Plaintiff's parents were promised that the ESD program was similar to The Child Center, a therapeutic day treatment center. Defendant did not consider the program to be a mental health program, although mental health services were included in the program. Compl., Ex. 1, *In the Matter of JS AND EUGENE SCHOOL DISTRICT 4J* - OAH Case No. 2020-ABC-04021 at 31, ECF No. 1-1 ("ALJ Opinion") at 4.

In August 2016, the IEP team amended Plaintiff's Special Education Placement Determination on the April 2016 IEP to reflect his enrollment at the ESD program. Compl. ¶ 21; Ans. 21. The August 2016 IEP amendment described this placement as "Public Separate

School 50% or more" and "Specialized program administered by the Lane ESD focusing on instructional level curriculum in small-groups, low student to teacher ratio programming, and embedded mental health supports." Ex. S19 at 21. The amended IEP indicated that Plaintiff would "receive specific behavior monitoring" as a benefit of this placement. *Id.* The Rationale for Selection section on the IEP Amendment states, "This placement best meets [Plaintiff's] needs at this time." *Id.* The 2016 IEP required the Behavioral Support Plan to be embedded into the program on a daily basis. *Id.* at 9. The IEP also required a "Special Education/Provider" to implement the Behavioral Support Plan, and the "Provider" was listed as "Educational Service District." *Id.*

Plaintiff enrolled in the ESD program at the Fox Hollow campus in September 2016. Compl. ¶ 22. While attending the program, Plaintiff made significant behavioral and academic progress between 2016 and summer 2018. *Id.* The ESD program communicated with Plaintiff's parents about Plaintiff's behavioral issues using a notebook, weekly emails, and monthly meetings. *Id.* at 5.

In April 2018, Plaintiff's IEP team held its annual meeting. *Id.* The team updated Plaintiff's April 2017 BSP and incorporated it into the April 2018 IEP. *Id.* The requirements adopted into Plaintiff's 2018 IEP included embedding his BSP into the program, a reinforcement system, and access to adult support. Ex. D8 at 11-12. These requirements were to be implemented on a daily basis by a "Special Education Teacher/Provider," which was again listed as "Education Service District." *Id.*

The 2017 BSP also listed specific procedures for intervening with Plaintiff's behavioral outbursts. *Id.* at 17-26. The Special Education Placement Determination on the April 2018 IEP described Plaintiff's placement for the upcoming school year only as "Public Separate School

50% or more." Ex. D9 at 2. The Placement Description box did not contain the "embedded mental health supports" language found on the August 2016 Placement Determination. *Id.* The Benefits of Placement section of the IEP indicated that Plaintiff "[w]ill receive specific behavior monitoring." *Id.* The Rationale section for the 2018 placement stated, "This placement best meets [Plaintiff's] needs at this time." *Id.*

After summer 2018, Eugene 4J School District began administering the Comprehensive Services Program at the Fox Hollow campus without the involvement of Lane Educational Services District, resulting in certain program changes. ALJ Opinion, 4. Consequently, Plaintiff's ongoing services program was referred to as the Fox Hollow 4J program ("4J program"). *Id.* The 4J program was meant to simulate neighborhood schools around the district to facilitate a transition into a less restrictive environment at the neighborhood schools. Tr. Vol 1 at 214:7-13. To facilitate this transition, the 4J program departed from the prior program in specific ways, including holding lunches in the cafeteria instead of in classrooms, using bells, and implementing tightly scheduled days that include blocks of time for each subject. Tr. Vol. 1 at 213:16-25. The 4J program also utilized different procedures, staff, and forms from the prior ESD program. *Id.* at 216:1-6. The 4J program had class sizes of 10 students, a full-time assistant in each class, and "floating" assistants among classes. Ex. D58 at 2. The 4J program had rotating staff in classrooms and did not have an embedded mental health specialist on the Fox Hollow campus. Ex. D72 at 1-2; tr. Vol. 1 at 104:25; ALJ Opinion at 7. The 4J program had at least one behavioral specialist at the campus. Tr. Vol. 1 at 116:3-9.

Central to this litigation is Defendant's implementation, with the 4J program, of a progressive discipline methodology ("PDM"), a district-wide program that replaced Defendant's prior method of tracking student behaviors. *Id.* The PDM program utilized major and minor

referral forms to track students' behaviors and behavioral triggers. *Id.* Joyce Smith-Johnson, Principal of the 4J program for the 2018-2019 school year, communicated the changes resulting from the ESD to 4J program transition, including the PDM, to Plaintiff's parents via a telephone call on or about August 14 or August 15, 2018. Tr. Vol 1 at 216:10-11. After learning that the ESD program would end, Plaintiff's father left a voicemail and emailed Ms. Smith-Johnson on or about August 17, 2018. Ex. D57 at 1. Plaintiff's parents received a more detailed explanation of the changes resulting from the transition in emails dated August 30, 2018, and August 31, 2018. Ex. D58 at 1-3.

The parties dispute the impact of the progressive discipline methodology on Plaintiff as well as its method of implementation. In the first three months of the 2018-2019 school year, Defendant documented twenty instances of inappropriate behavior by Plaintiff, including hitting and biting teachers. ALJ Op. at 8-9. Referrals were completed and Plaintiff was suspended on two occasions pursuant to the PDM. *Id.* The parties dispute whether Plaintiff's BSP was properly implemented during this time. Principal Smith-Johnson and School Support Administrator Leila Shuck testified that the BSP was implemented through in-classroom binders that were available to Plaintiff's teachers when he acted up. Tr. Vol. 1 221-222; Tr. Vol. 2 336-339. Staff testimony did not establish clear timelines of when these binders were provided and how often they were used. Ms. Shuck testified that she witnessed Plaintiff's Behavior Support Plan being implemented twice during the 2018-2019 school year. Tr. Vol. 2 at 339:7.

In a November 2018 IEP meeting, parents shared their beliefs that the 4J program caused harm to Plaintiff. ALJ Op. at 10. The IEP team discussed transferring Plaintiff to The Child Center, a therapeutic day treatment program providing education and behavioral services and agreed that placement in The Child Center was the best option for Plaintiff. ALJ Op. at 11. The

team then discussed the option of placing Plaintiff on home instruction while waiting for an opening at The Child Center. *Id.* Defendant offered to provide Plaintiff five hours of home instruction per week, and Plaintiff's mother informed the IEP team that the maximum amount of continuous instructional time Plaintiff could handle at that time was 90 minutes. *Id.*

Plaintiff was subsequently placed on home instruction from the end of November 2018 until the end of the 2018-2019 school year. *Id.* at 12. During that time, Plaintiff's home instructor worked with Plaintiff on his academic skills and behavioral and social goals. *Id.* at 12-13. Defendant denied Plaintiff's parents' request to pay for childcare costs for non-instructional hours that Plaintiff spent at home. *Id.* Following IEP meetings in December 2018 and March 2019, Plaintiff began attending classes at The Child Center on July 25, 2019. *Id.* at 16. The Child Center billed Plaintiff's parents' insurance; it had a policy to bill school districts if parents' insurance refused to pay. *Id.* at 15-16.

## II.     Administrative Proceedings

When parents and school representatives disagree on the adequacy of a child's IEP, the IDEA establishes formal procedures for resolving disputes. A parent may file a complaint with the local or state educational agency that triggers a preliminary hearing between the parties, 20 U.S.C. § 1415(b)(6), or the parent may proceed with mediation, 20 U.S.C. § 1415(e). If a resolution cannot be achieved, the matter proceeds to a "due-process hearing" before an impartial hearing officer. 20 U.S.C. § 1415(f)(1)(A), (3)(A)(i). Any decision by the hearing officer that grants substantive relief must be "based on a determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i). A parent who is unhappy with the outcome of the administrative process may then seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

In September 2020, Plaintiff initiated an administrative due process hearing before the Oregon Department of Education pursuant to the IDEA, seeking redress for Defendant's actions during the 2018-2019 school year. Administrative law judge ("ALJ") Jill Messecar held a prehearing teleconference with the parties on October 9, 2020. An administrative due process hearing commenced on April 12, 2021 and concluded on April 15, 2021. The issues before the ALJ were: whether Defendant denied Plaintiff a FAPE in violation of the IDEA; and whether Defendant denied Plaintiff a FAPE under the Rehabilitation Act of 1973 (Section 504) by acting with deliberate indifference toward Plaintiff's need for specially designed instruction ("SDI"), services, and accommodations. ALJ Opinion at 16. In July 2021, ALJ Messecar issued a Final Order ruling in favor Defendant on both issues. ECF 1-1.

Before evaluating Plaintiff's claims, the ALJ made 101 findings of fact, some of which are contested by Plaintiff. The ALJ then noted that the burden of persuasion in an administrative hearing challenging an IEP is placed upon the party seeking relief; in this case, the Plaintiff. ALJ Op. at 16. After discussing each of Plaintiff's allegations in light of the factual findings, the ALJ concluded that

> The evidence in this case simply does not show that the [Defendant] failed to act when [Plaintiff] acted inappropriately. While it is clear that in hindsight, the [Defendant's] actions were inadequate, there is no evidence that the inadequacy was intentional nor done with deliberate indifference towards [Plaintiff's] needs as a disabled person.

ALJ Op. at 30. The ALJ therefore concluded that the record did not establish that Defendant violated the IDEA and Section 504 and denied Plaintiff's request for relief. *Id.* Plaintiff timely filed an appeal of the ALJ's Order in September 2021. *See* Compl., ECF No. 1.

**STANDARD OF REVIEW**

Congress enacted the IDEA to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(1)(A); see also *Forest Grove School District v. T.A.*, 557 U.S. 230, 239 (2009). For administrative appeals of IDEA due process hearings, a reviewing district court receives the administrative record, hears any additional evidence, and, basing its decision on the preponderance of the evidence, grants such relief as it determines appropriate. *R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist.,* 496 F.3d 932, 937 (9th Cir. 2007) (citation omitted). Although this standard of review gives district courts broader discretion than they usually possess in administrative appeals, the review is not de novo. *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.,* 267 F.3d 877, 887 (9th Cir. 2001). Whether a school district violated the IDEA is a mixed question of law and fact, *Anchorage Sch. Dist. v. M.P.,* 689 F.3d 1047, 1053 (9th Cir. 2012). Thus, this Court applies a standard of "modified de novo review." *Ashland Sch. Dist. v. Parents of Student R.J.,* 585 F. Supp. 2d 1208, 1211 (D. Or. 2008). That standard is an "unusual mixture of discretion and deference" that "differs substantially from judicial review of other agency actions." *Ojai United Sch. Dist. v. Jackson,* 4 F.3d 1467, 1471–72 (9th Cir. 1993).

When considering how much deference to give a final ALJ decision, federal courts must give the ALJ decision "due weight." *Bd. of Educ. of Hendrick Hudson Centr. Sch. Dist., Westchester Cnty. v. Rowley,* 458 U.S. 176, 206 (1982)). This is because Congress gave states the "primary responsibility of formulating each individual child's education." The requirement recognizes that state educational agencies possess "specialized knowledge and experience" and

thus prevents courts from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Rowley,* 458 U.S. at 206. Despite the due weight requirement, the appropriate amount of deference given to a final ALJ decision depends on the thoroughness of the findings supporting the administrative decision. *Parents of Student W. v. Puyallup Sch. Dist.,* 31 F.3d 1489, 1494 (9th Cir. 1994). The ALJ's ultimate determination of the appropriateness of the educational program is reviewed de novo. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).

## DISCUSSION

On appeal of the ALJ's decision, Plaintiff reasserts their argument that Defendant improperly modified and failed to implement his IEP during the 2018–19 school year in violation of the IDEA; the ADA; Section 504 of the Rehabilitation Act; and ORS § 343.175. See ALJ Opinion at 20–30. Plaintiff's Complaint and Opening Brief challenge both the ALJ's characterization of the factual record and the ALJ's conclusions of law. *Id.;* Pl. Op. Br., ECF 39.

## I.      Plaintiff's Allegations of Factual Errors

Plaintiff challenges the ALJ's factual findings with respect to (1) the implementation of the BSP; (2) the removal of therapeutic mental health services from the 4J Program; (3) the progressive discipline model; and (4) the responsibility for providing childcare costs.

### A.      Legal Standards

The Court has discretion to decide how much deference it gives to the ALJ's factual findings. See *Cnty. of San Diego v. Cal. Spec. Educ. Hearing Off.,* 93 F.3d 1458, 1466 (9th Cir. 1996). The Court, however, "at a minimum, must consider the findings carefully," and check for clear error. *R.B.,* 496 F.3d at 937 (simplified); *Capistrano,* 59 F.3d at 891. District courts give "particular deference" where the hearing officer's administrative findings are "thorough and

careful." *Id.* (internal quotation marks and citation omitted).  The courts also give deference to the hearing officer's credibility determinations of live witnesses. *See Ms. S. ex rel. G. v. Vashon Island Sch. Dist.,* 337 F.3d 1115, 1127 (9th Cir. 2003) ("Normally, a finder of fact's determination of credibility receives deference on appeal, because access to live testimony is important to the credibility finding."); *Amanda J.,* 267 F.3d at 889 (recognizing that ALJs receiving live testimony are in the best position to determine issues of credibility").

B.     **Implementation of the BSP**

Plaintiff first alleges that the ALJ's finding that Plaintiff's behavioral support plan was implemented after he was transferred from the ESD program to the 4J program constitutes error. Plaintiff alleges that the ALJ failed to consider Plaintiff's documents and testimony, and that her factual findings were not based on documentary evidence.

Plaintiff contends that following his placement in the 4J program and removal from the ESD program, Defendant failed to implement his behavioral support plan. In her administrative order, the ALJ noted that she based her factual findings regarding the BSP implementation on testimony received at the administrative hearing. She wrote: "At the hearing, District staff who worked with [Plaintiff] testified consistently that they were aware of the BSP and worked to implement the described supports in the fall of 2018." ALJ Opinion at 31. At the hearing, district administrators Principal Smith-Johnson and Ms. Shuck testified that behavior support plans were printed and placed in binders at the start of the school year to be used by staff in the classroom. While Ms. Shuck could only point to two instances where she personally observed Plaintiff's binder in use, Plaintiff fails to provide significant reasons to doubt the testimony that the plans were implemented from the outset.

Plaintiff argues on reply that the ALJ failed to properly assess the credibility of the witnesses, and that Plaintiff's expert witness testimony should have been given more weight. Pl. Repl. at 3. In the Ninth Circuit, a hearing officer's credibility determinations of live witnesses is due deference by the reviewing court. *Vashon Island Sch. Dist.*, 337 F.3d at 1127. This is because "ALJs receiving live testimony are in the best position to determine issues of credibility." *Amanda J.,* 267 F.3d at 889. Here, Plaintiff's expert witness Tori Wright testified that a lack of documentation of the BSP implementation meant that the BSP was not implemented. Pl Repl. Br. at 14, citing Tr. Vol. 3 673:09–674:04. Ms. Wright admitted, however, that she was not in the classroom to observe whether Plaintiff's BSP was in fact implemented. Plaintiff also cites an October email asking for student BSPs to be uploaded as evidence that Plaintiff's BSP was not implemented at the start of the school year. However, Plaintiff provided no testimony of in-class observations that would contradict the testimony of Principal Smith-Johnson or Ms. Shuck. Ex. S70. After hearing testimony from each of these witnesses, the ALJ observed that Defendant's witnesses "testified consistently." Because the ALJ made credibility determinations while weighing testimony, the Court defers to the hearing officer's determination that Plaintiff's BSP was properly implemented at the 4J program. See *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.,* 626 F.3d 431, 446 (9th Cir. 2010); *Parents of Student W.,* 31 F.3d at 1494 (the appropriate amount of deference given to a final ALJ decision depends on the thoroughness of the findings supporting the administrative decision).

C.      **Removal of Embedded Mental Health Services**

Plaintiff next argues that the ALJ erred in determining that the removal of therapeutic mental health services from the Fox Hollow campus when the 4J program was implemented represented a change in Plaintiff's placement. While a change in educational location or program

management is allowed under the IDEA, an impermissible change in placement occurs when the components of a student's previous IEP services are altered significantly. *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993-994 (2017). Thus the relevant factual findings from the hearing officer are her findings regarding whether Plaintiff's IEP services were altered by the removal of embedded mental health services from the Fox Hollow campus when the 4J program was implemented.

To this point, in her summary of factual findings, the ALJ wrote:

When [Defendant] assumed full responsibility for the Fox Hollow program after the 2018-2019 school year, they did not provide an embedded mental health specialist at the campus for the program because the program's emphasis was on behavioral specialists. [Defendant] had mental health specialists in the District available if there was a need for a student to meet with one.

ALJ Op. at 7. Plaintiff argues that the April 2018 IEP required "embedded mental health supports" and that therefore the removal of mental health and behavioral specialists from the Fox Hollow campus in 2018 constituted a change in placement in violation of the IDEA. Contrary to Plaintiff's assertion, however, the April 2018 IEP and BSP for the 2018-2019 school year did not contain specific language requiring embedded mental health supports. Plaintiff's BSP required simply that he have access to a mental health specialist when necessary. Because mental health specialists were still available to Plaintiff while he was enrolled in the 4J program, the removal of an embedded mental health specialist from the Fox Hollow campus did not preclude the implementation of Plaintiff's BSP. On this record, the ALJ's conclusion that Plaintiff's IEP was implemented when he transitioned from the ESD program to the 4J program was not error. It follows that the removal of embedded mental health services from Fox Hollow did not constitute a change in Plaintiff's placement under the IDEA.

### D.    Progressive Discipline Methodology

Plaintiff also argues that the ALJ erred by failing to find that Defendant's implementation of the Progressive Discipline methodology ("PDM") constituted a change in educational placement in violation of IDEA. The factual issue before the ALJ with respect to the PDM was whether its implementation during the 2018-2019 school year altered Plaintiff's IEP services. *Endrew F.*, 137 S. Ct. at 993-994. The ALJ determined that the PDM did not contradict the behavioral support plan in Plaintiff's IEP based on relevant caselaw and her evaluation of the hearing testimony, noting that:

> There is nothing in [Plaintiff's] BSP that prohibits District staff from documenting behavioral incidents. The evidence conclusively established that staff at the Fox Hollow ESD program documented [Plaintiff's] behavior on incident forms and shared them with [Plaintiff's parents] at the monthly WRAP meetings. In addition, nothing in [Plaintiff's] BSP prohibited District staff from suspending [Plaintiff] is he/she physically injured someone.

ALJ Op. at 21.

The ALJ's determination was based on witness testimony that the progressive discipline methodology, despite its title, was not a disciplinary program and was instead simply a way to track referrals. *Id.* While the referrals apparently created the perception that Plaintiff was being disciplined, the ALJ found that the referrals alone and even the suspensions due to behavior did not explicitly contradict Plaintiff's BSP. In making this determination, the ALJ relied upon testimony from school staff who noted that the PDM was a behavior data collection system designed to analyze and improve student behaviors. The ALJ also considered the testimony of Plaintiff's parents, who alleged that the PDM was punishing Plaintiff based on his reactions to the 4J program. Based on her evaluation of the testimony, the ALJ concluded that the PDM was not punitive but rather constituted an appropriate data collection scheme. The ALJ supported her conclusion by citing relevant caselaw establishing that normal disciplinary rules are allowed

under the IDEA so long as they are not applied in a discriminatory manner and are not inconsistent with a child's IEP. ALJ Op. at 21-22.

Plaintiff argues that this was error because the ALJ's conclusion "relied on unsubstantiated … testimony." Pl. Op. Br. at 9. The Court disagrees. As discussed above, the ALJ's conclusions were based on an analysis of the available testimony from both school officials and from Plaintiff's parents. The Court will not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Capistrano*, 59 F.3d at 891. The Court therefore defers to the ALJ's factual findings regarding the progressive discipline methodology. *Parents of Student W.,* 31 F.3d at 1494 (the appropriate amount of deference given to a final ALJ decision depends on the thoroughness of the findings supporting the administrative decision).

### E.    Provision of Childcare Costs

Plaintiff argues, finally, that the ALJ erred by determining that Defendant was not responsible for childcare costs while Plaintiff was on home instruction. Plaintiff alleges that this determination was based on the ALJ's erroneous factual finding that Defendant "had paid for day care during [Plaintiff's] first grade because they utilized the day care setting to perform some observations and evaluations that they needed to have conducted." ALJ Op. at 11. Plaintiff argues that this was error because Defendant conducted observations in the home of Plaintiff's personal service worker.

The Court disagrees. The ALJ's determination regarding childcare costs was based on the amount of instructional time provided by Defendant. ALJ Op. at 11; 29. While the ALJ noted that Plaintiff's parents might understandably seek reimbursement for the hours that Plaintiff's personal service worker cared for him, she explained that the IDEA does not require school

districts to pay childcare costs while a student is placed in home instruction. ALJ Op. at 29. Because the ALJ's conclusion was based on a thorough review of the record and the application of proper legal standards, the Court defers to the ALJ's determination. *Parents of Student W.,* 31 F.3d at 1494.

## II.     Plaintiff's Allegations of Legal Errors

Plaintiff also challenges the ALJ's conclusions of law by alleging that the ALJ erroneously determined that (1) Plaintiff bore the burden of persuasion regarding his assertions about the IEP implementation; (2) Defendant did not violate the IDEA; (3) Defendant did not violate Section 504; (4) that Plaintiff should pay transcript costs; and (5) that it was appropriate for The Child Center to bill Plaintiff's parents' insurance.

### A.     Burden of Persuasion

As an initial matter, Plaintiff disputes the ALJ's ruling that Plaintiff bore the burden of persuasion to show a failure of IEP implementation between September 2018 and June 2019. In support of this argument, Plaintiff cites *M.C. v. Antelope Valley Union High Sch. Dist.*, 852 F.3d 840, 851 (9th Cir. 2017) for the proposition that Defendant bears the burden of persuasion to show that Plaintiff's IEP was properly implemented. Pl. Op. Br., ECF 39 at 30. The ALJ found that Plaintiff's application of this case was overbroad. ALJ Opinion at 16-17. The Court agrees.

In *Antelope Valley*, the Ninth Circuit held that the school district had the burden of showing IEP implementation when the district had committed a procedural violation by depriving a student's parents of knowledge on what services were being provided under the student's IEP. *M.C. v. Antelope Valley Union High Sch. Dist.,* 858 F.3d 1189, 1200 (9th Cir. 2017). Here, Plaintiff argues that Defendant did not provide enough data about the BSP implementation to Plaintiff's parents. Pl. Op. Br. at 31-32. However, even if this were true,

Plaintiff's argument would be insufficient to shift the burden because Plaintiff failed to allege a procedural violation arising out of a deprivation of knowledge of Plaintiff's services.

It is undisputed that Plaintiff's parents were involved in the IEP team meetings and received multiple communications regarding what services were being provided under the IEP at the 4J program (ex. D58 at 1-4; ex. D66 at 1-2; D74 at 1); Plaintiff's parents received Plaintiff's Master Special Education file on November 19, 2018 (ex. D82 at 1) and had actual knowledge of what services were being provided during home instruction. Tr. Vol 4 at 863:4-12 (Mother's testimony about home instruction implementation). On this record, the Court finds that the ALJ properly allocated the burden of persuasion to Plaintiff, the party seeking relief, to show a failure of IEP implementation for the 2018-2019 school year. *Schaffer ex rel. Schaffer v. Weast*, 126 S. Ct. 528 (2005).

### B. Violations of IDEA

Plaintiff next argues that the ALJ improperly concluded that Defendants did not violate the IDEA. Specifically, Plaintiff argues that that the ALJ erred by failing to find that (1) the transition from the ESD program to the 4J program constituted a "change in placement" in violation of the IDEA; (2) Plaintiff was denied a FAPE in violation of the IDEA; and (3) Defendants failed to educate Plaintiff in the least restrictive environment ("LRE") in violation of the IDEA.

#### 1. Change in Placement

As discussed in Section I above, the ALJ's factual evaluations of the alleged change in placement brought on by the PDM and the changes in staffing at the 4J program were supported by a thorough evaluation of the evidence and are therefore given deference. *Parents of Student W.,* 31 F.3d at 1494. To reiterate, Plaintiff's 2018 IEP and BSP did not require Plaintiff's

services to be provided in a manner identical to the service provision within the ESD program. The 2018 behavioral support plan simply set out different strategies and requirements for staff to engage with Plaintiff to de-escalate and provide support. While the staff turnover involved in the transition from the ESD program to the 4J program appears to have negatively impacted Plaintiff's behavior, IDEA does not require consistent staffing so long as a student's services are not impacted.

The record supports the ALJ's determination that the behavioral support services required by Plaintiff's BSP were available in the 4J program, even though they were not delivered in an identical manner to the ESD program. The ALJ's legal conclusion that the transition to the 4J program – which included staffing changes and implementation of the PDM – did not constitute a "change in placement" in violation of IDEA was not error. Further, to the extent that Plaintiff reiterates his argument that the 2018 BSP was not implemented at the 4J program, the Court also rejects this argument for the reasons discussed above. For the purposes of the IDEA, Plaintiff's 2018 BSP was not impacted by the transition from the ESD program to the 4J program.

### 2. Plaintiff was not denied a FAPE

Plaintiff next argues that the ALJ erred because she failed to conclude that Plaintiff was denied a Free and Appropriate Public Education ("FAPE") in violation of the IDEA. In exchange for a commitment to furnish a free and appropriate public education ("FAPE") to all children with certain physical or intellectual disabilities, the IDEA offers states federal educational funding. 20 U.S.C. § 1412(a)(1)(A). A FAPE comprises "special education and related services," including instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction. 20 U.S.C. §§ 1401(9), (26), (29). *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49 (2017); *see also A.F. by & through Fournier v.*

*Portland Pub. Sch. Dist.*, No. 3:19-cv-01827-BR, 2020 WL 1693674, at *2–3 (D. Or. Apr. 7, 2020).

Plaintiff specifically argues that the ALJ "incorrectly held that a District may be absolved of its duty to provide a FAPE to a child for seven months if that district does not have an appropriate placement available and the private program setting that provided the FAPE placement components was [sic] full" Pl. Br. at 14. Here, the evidence in the record indicates that Plaintiff's November 2018 IEP team made the determination to implement a multi-step placement process, both parts of which the team reached consensus. The team agreed that Plaintiff would first receive instruction in an interim placement of home instruction, before attending a day treatment program, The Child Center. This complied with applicable law. See 34 C.F.R. § 300.116(a)(1) (IEP team must make the decision for home instruction placement); *C.B. v. Garden Grove Unified Sch. Dist.*, 575 F. App'x 796 (9th Cir. 2014) (IDEA allows the use of interim placements). Here, the ALJ properly deferred to the two-step placement determination made by Plaintiff's IEP team.

The ALJ also considered Plaintiff's argument that Defendant was required to provide a full day of instruction while Plaintiff was on home instruction. ALJ Opinion at 23. The ALJ found that Defendant was not required to provide an identical number of hours of instruction while Plaintiff was working one-on-one with a special education teacher as when Plaintiff was attending school in a classroom setting. *Id.* at 23. This finding was made in light of undisputed evidence that Plaintiff's mother indicated to the IEP team that Plaintiff could tolerate a maximum of 90 minutes of instruction per day. See C.F.R. § 300.11(c) ("School day means any day, including a partial day that children are in attendance at school for instructional purposes"). Again, the ALJ accepted the IEP team's determination that Plaintiff should be placed on home

instruction pending his enrollment in The Child Center, and the Court finds no legal error in her conclusion that this determination did not violate the IDEA.

Plaintiff cites *Cordero v. Penn. Dept. of Educ.*, 795 F. Supp. 1352 (M.D. Pa. 1991) and *J.N. v. Oregon Dept. of Educ.*, No. 6:19-cv-00096-AA (D. Or. Sep. 1, 2020) for the proposition that Plaintiff's two-step placement in the Child Center violated the IDEA. These cases are inapposite. In *Cordero*, the Middle District of Pennsylvania considered a class action lawsuit on behalf of students who had been given the option to remain in unsuitable placements or "simply remain at home" without receiving services. 795 F. Supp. At 1357. That is not the case here. In *J.N.*, cross motions for summary judgment are still pending, and the Court has not issued any ruling that is binding on this case.

On reply, Plaintiff renews his argument that home instruction constituted a denial of a FAPE because the IEP team agreed in November 2018 that Plaintiff should be placed in a day treatment center, apparently suggesting that this decision ruled out the appropriateness of Plaintiff's interim home placement. While it is a school district's responsibility to provide a FAPE, even when parents request a placement that denies a student a FAPE, 34 C.F.R. §§ 300.101; 300;114, Plaintiff's entire IEP team, which included Plaintiff's parents, determined that Plaintiff's two-step placement was tailored to meet his educational needs. See *C.L. v. Lucia Mar Unified School Dist.*, 646 Fed. Appx. 524 (9th Cir. 2016) (finding that the question of whether a student's IEP was FAPE is moot because student's mother consented to all parts of that IEP). It was thus appropriate for the ALJ to find that Defendant complied with the IDEA by acting in accordance with Plaintiff's IEP, which had been reasonably calculated to enable Plaintiff to receive educational benefits as required by the IDEA. See *Board of Educ. Of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 178 (1982).

Plaintiff also alleges that he was denied a FAPE while on home instruction because Defendant failed to provide all of the behavioral supports and instructional hours indicated on his IEP. Pl. R. Brief, ECF 44 at 9-12. In evaluating the implementation of Plaintiff's IEP during home instruction, the ALJ noted that there was

> no evidence that the [Defendant] in this case had an obligation to provide services designed to be implemented in the school setting during home instruction which Parents agreed to while waiting for a spot for [Plaintiff] to open up at The Child Center. The deprivation of school-based services was a result of the agreed up on temporary change while waiting for [Plaintiff] to be able to attend The Child Center.

ALJ Op. at 22. In making this determination, the ALJ relied on *C.L. v. Lucia Mar Unified School Dist.*, 646 Fed. Appx. 524 (9th Cir. 2016), an unpublished Ninth Circuit opinion affirming a district court's determination that a student's IEP did not require behavioral services in the home setting. Plaintiff argues that the ALJ's reliance on this decision "goes against the IDEA principles," but does not provide explanation or legal argument to support this contention; rather, Plaintiff reiterates the school-based service requirements contained in Plaintiff's IEP. On this record, the Court finds no reason to disturb the ALJ's determination that the failure to implement supports for all of Plaintiff's social, emotional, and behavioral goals for the school environment while he was on home instruction was not a denial of FAPE.

Plaintiff argues, finally, that he was denied a FAPE because Defendant declined to pay childcare costs to Plaintiff's parents for the hours that Plaintiff was not receiving instruction while he was on home instruction. Plaintiff argues that to the extent that the ALJ relied on her findings of fact to deny Plaintiff's parents' request for payment to childcare during the school day, the ALJ committed reversible error. The Court disagrees. The IDEA does not require school districts to pay childcare costs while a student is placed in home instruction. As discussed above, the ALJ supported her conclusions with applicable law and appropriate factual findings, noting

caselaw stating that "the element of 'free' in FAPE requires that instruction and support services be provided at public expense." ALJ Op. at 30. Plaintiff has not provided legal argument to rebut the ALJ's reasoning, and the Court concludes that the ALJ's finding that the IDEA did not require Defendant to pay childcare costs for the hours that Plaintiff was not receiving home instruction was not error.[2]

### 3. Home Instruction was not a denial of LRE

Plaintiff also argues, for the first time on appeal, that the ALJ erred by failing to find that the decision to place him on home instruction pending his enrollment in The Child Center constituted a violation of the IDEA by failing to educate Plaintiff in the least restrictive environment ("LRE"). Plaintiff failed to raise this issue in the administrative process, and in fact noted in his Request for Hearing that his educational placement did not change between the 2017-2018 and 2018-2019 school years. Because Plaintiff failed to exhaust his administrative remedies on this issue by raising this argument before the ALJ, the Court need not consider this argument on appeal of the ALJ's decision. See ECF 16, 8-9 (this Court's Findings and Recommendation explaining that students bringing claims under the IDEA are required to raise all claims in their Due Process complaint or risk waiving any claims not specifically enumerated).

---

[2] Plaintiff also argues that the ALJ erred by failing to find that there was a denial of FAPE when The Child Center billed Plaintiff's parents' insurance. Plaintiff, however, provides no legal or factual argument as to why the Court should reverse the ALJ's determination other than the assertion that Defendant acted "in violation of 34 C.F.R. § 104.33(c)." Pl. Reply at 21. That section of the C.F.R. provides that "Nothing in this section shall be construed to relieve an insurer … from an otherwise valid obligation to provide or pay for services provided to a handicapped person." Because Plaintiff's parents signed a consent form allowing The Child Center to bill their insurance, an "otherwise valid obligation" was created, and there was therefore no denial of FAPE based on these facts.

Nevertheless, Plaintiff reasserts this argument in her reply brief (ECF 44) and alleges that the ALJ erred because she failed to apply the four-part test for determining whether Plaintiff had been placed in the LRE utilized in *Sacramento City Unified Sch. Dist. Bd. Of Educ. V. Rachel H*, 14 F.3d 1398 (9th Cir. 1994). Notwithstanding Plaintiff's failure to raise a LRE argument in her Due Process complaint, Plaintiff's argument is misplaced. In *Rachel H.*, the Ninth Circuit affirmed the district court's determination that the student's appropriate placement was full-time in a regular classroom with supplemental services. In making that determination, the district court performed a balancing test that considered four factors: (1) the educational benefits available in the regular classroom; (2) the non-academic benefits of interaction between a student with disabilities and those without disabilities; (3) the impact of the student with disabilities on the teacher and other children in the regular classroom; and (4) the cost of supplementary aids and services required for mainstreaming the student. *Id.* at 1401-01. The Ninth Circuit approved and adopted the test employed by the district court for determining compliance with IDEA's mainstreaming requirement.

Here, while the ALJ did not explicitly refer to the Ninth Circuit's decision in *Rachel H.*, she thoroughly considered evidence relevant to each of the four factors. Specifically, she noted that Plaintiff's mother indicated that Plaintiff could tolerate no more than 90 minutes of instruction per day and that the IEP team unanimously determined that Plaintiff should be placed on home instruction as part of a two-step placement plan. On this record, it was appropriate for the ALJ to defer to the IEP team's findings and conclude that the team's considered recommendation represented the least restrictive environment for Plaintiff. The Court will not substitute its "own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain

procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions aside." *Westchester County*, 458 U.S. at 178. For these reasons, the Court finds that the ALJ did not err.

## C.      Section 504 & ADA Claims

Plaintiff also asks the Court to reverse the ALJ's finding that Defendant complied with Section 504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA"). Plaintiff argues that Plaintiff's abbreviated school day denied him an equal opportunity to enjoy the benefits of a full day at school, in violation of the ADA and Section 504. ECF 39 at 38-39. The ADA states that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The regulations promulgated under the Rehabilitation Act state that: "[n]o qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 34 C.F.R. § 104.21.

34 C.F.R. § 104.36 provides that compliance with the procedures in the IDEA satisfies the requirements of Section 504. A school district's valid implementation of an IEP also fulfills Section 504's obligation for districts to provide a FAPE to students with disabilities. 34. C.F.R. § 104.33(b)(2). In the Ninth Circuit, Section 504 claims automatically fail where a district has been found to offer a student a valid IEP. See, e.g., *Scanlon v. San Francisco Unified Sch. Dist.*, 1994 WL 860768 (N.D. Cal. 1991), *aff'd*, 69 F.3d 544 (9th Cir. 1995). The ADA adopts the program

accessibility concepts found in the regulations for section 504 of the Rehabilitation Act. See 28 C.F.R. §§ 35.150(b)(1), 35.103(a) (1993).

In evaluating Plaintiff's Section 504 and ADA claims, the ALJ noted that Defendant had implemented an appropriate IEP for Plaintiff and complied with the procedures in the IDEA for providing a FAPE. ALJ Opinion at 29-30. As discussed above, the ALJ properly determined that Plaintiff's abbreviated school day complied with the implementation of an appropriate IEP. The Court therefore finds no reason to disturb the ALJ's determination with respect to Plaintiff's Section 504 claims. As Plaintiff cannot show a violation of the requirements promulgated under the Rehabilitation Act, his claims under the ADA also fail.

On reply, Plaintiff renews his arguments that Defendant failed to provide a full day of instruction; failed to pay for childcare; failed to place Plaintiff at a day treatment center in November 2018; and failed to pay for the mental health therapist at The Child Center. As discussed throughout these Findings and Recommendation, Plaintiff has failed to show factual or legal error in the ALJ's opinion. To the extent that Plaintiff rephrases his assignments of error under the rubric of Section 504 and the ADA, these arguments also fail.

**D.    Transcript Costs**

Plaintiff argues that he should not have been required to pay transcript costs incurred at the hearing. The ALJ has discretion to order a party to contribute to the costs of a transcript that covers Section 504 claims. Under OAR § 581-015-2385(b), "The school district must provide the parent with a written, or at the option of the parent, an electronic verbatim recording of the hearing, within a reasonable time of the close of the hearing" for allegations brought under the IDEA. This requirement does not apply to Section 504 claims. See OAR § 581-015-2395(4). The

parties have presented no compelling reason for the Court to find that the ALJ abused her discretion in ordering Plaintiff to pay transcript costs.

## RECOMMENDATION

For the reasons above, the ALJ's final order should be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED this <u>19th</u> day of May 2023.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge